UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| ROCKY W. THRASH | CIVIL ACTION NO. 06-0123 |
| VERSUS | JUDGE S. MAURICE HICKS, JR |
| CITY OF BOSSIER CITY | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment filed by the defendant, the City of Bossier City ("the City"). See Record Document 15. The plaintiff, Rocky W. Thrash ("Thrash"), opposes the Motion for Summary Judgment. See Record Document 19. For the reasons assigned herein, the City's Motion for Summary Judgment is **GRANTED** and Thrash's claims are **DISMISSED WITH PREJUDICE**.

**I.   FACTUAL AND PROCEDURAL BACKGROUND.**

In 1993, the City Council of Bossier City authorized a special zoning district, the Riverfront Development District ("RDD"). The intent of Bossier City Ordinance No. 146 of 1993, which established the RDD, stated:

> With the current interest in riverfront development and with most of the river frontage in private ownership and undeveloped, it is appropriate to adopt a Riverfront Development District to regulate new uses and prohibit undesirable uses within a designated area. It is the intent to enhance the quality of life, but without creating any undue hardship on the private sector.

Record Document 15, Exhibit A-1 (Ordinance No. 146 of 1993). Ordinance No. 146 clearly specified the physical boundaries of the RDD and the "permitted uses" in the RDD, which included both "uses by right" and "uses requiring planning commission approval and a public hearing" in order to operate within the RDD. Id. "Automobile and Truck Sales & Repair (New Automobile Sales Only)" is listed in Ordinance No. 146 as a use requiring

planning commission approval and a public hearing. Id. Ordinance No. 146 does not permit used car sales in the RDD. See id., Exhibit A (Affidavit of Salvatore Marsiglia) at ¶ 4.

Ordinance No. 146 was an amendment to the Bossier City Code of Ordinances, Chapter 13, Zoning. See id. Under Bossier City-Parish Metropolitan Planning Commission ("MPC") Zoning Ordinance No. 33 of 1978, which was adopted by both the City Council of Bossier City and the Bossier Parish Police Jury, "the lawful operation of a nonconforming use as such existed on the effective date of this ordinance or on the effective date of any amendment hereto by which the use became a nonconforming use, may be continued." Id., Exhibit A-2 (Bossier City-Parish MPC Zoning Ordinance). "A nonconforming use that has been abandoned or discontinued for a period of six months shall not thereafter be re-established." Id.

In 2003, the City adopted the Unified Development Code ("UDC"), which repealed Zoning Ordinance No. 33 of 1978. See id., Exhibit A-2 (UDC). As to nonconforming uses, the UDC stated:

**7.3.1 Nonconforming Use or Occupancy**

    D.    The resumption of a non-conforming use may be granted by the Bossier City Council or the Bossier Parish Police Jury.

**7.4.1 Cessation of Nonconforming a Use, Occupancy or Sign**

A nonconforming use, occupancy or sign that has been abandoned or discontinued for a period of 6 months shall not thereafter be reestablished.

Id.

This case involves property located within the RDD at 320 East Texas Street,

Bossier City, Louisiana ("the Property").  According to Salvatore Marsiglia ("Marsiglia"), Executive Director of the Bossier City-Parish MPC, zoning records reflect that the Property was formerly owned by the Hawkins family.  See id., Exhibit A at ¶ 8.  In April 1996, Al Cobb ("Cobb") applied to the City Council to operate a used car sales business at the Property.  See id.  Historically, the Property had been utilized for used car sales businesses.  See id.  However, since such use had stopped for a period in excess of six months, Cobb had to apply to the City Council for the right to operate a used car sales business in the RDD.  See id.  On May 7, 1996, the City Council approved Cobb's request for a nonconforming use at 320 East Texas Street for a five year term (1996-2001), subject to renewal at the expiration of the five year term.  See id., Exhibit A-3 (Ordinance No. 42 of 1996).  On May 9, 1996, the MPC issued a certificate of occupancy to Cobb for a used car sales business at the Property.  See id., Exhibit A-4 (Certificate of Occupancy).

On August 22, 2000, within Cobb's five year term, Thrash applied for and was granted a certificate of occupancy for a used car sales business, "Rocky's Auto Sales," at the Property.  See id., Exhibits A-5 (Application) & A-6 (Certificate of Occupancy). Thrash's business partner, Todd Shores ("Shores"), leased the Property from Hawkins Family, L.L.C. for approximately six months and then purchased the Property in November 2000.  Thrash received annual occupational licenses to operate his nonconforming used car sales business each year from 2000-2004.

On October 22, 2003, Benson's Foreign and Domestic Auto Repair applied to the MPC to operate a repair shop on part of the Property.  See id., Exhibit A-7 (Application). Under the RDD, an automobile repair business is a use requiring planning approval.  See id., Exhibit A-1.  A hearing on the application was held on November 17, 2003 and the

application was denied.  See id., Exhibit A-8 (Letter to Benson's from Marsiglia).

Due to the application by Benson's Foreign and Domestic Auto Repair, the MPC became aware that Thrash's temporary zoning right, via Cobb's five year term, had expired.  See id., Exhibit A at ¶ 14.  On December 16, 2003, Thrash appeared before the City Council to request that he be allowed to operate a used car sales business at the Property in perpetuity.  See id., Exhibit B (Thrash Deposition) at 94.  The City Council granted Thrash the right to operate his used car sales business at the Property for an additional two years, subject to reapplication at the expiration of the two year term.  See id., Exhibit A-9 (Ordinance No. 125 of 2003).

Thrash closed his business and sold the Property before expiration of his two year term.  See id., Exhibit B at Thrash #10.  The public records indicate that Thrash sold the Property on March 24, 2005.  See id.  Thrash never applied to the City Council for renewal of the right to operate the used car sales business at the Property.  See id., Exhibit B at 94.  Based on dialogue from the City Council's December 16, 2003 meeting, Thrash believed that there would be no renewal of his application to operate a used car sales business at the Property at the end of two years.  See id., Exhibit B at 94-95.

On December 30, 2005, Thrash filed suit in the Twenty-Sixth Judicial District Court, Parish of Bossier, alleging violation of the Due Process Clause, violation of the Equal Protection Clause, and negligence under Louisiana law.  See Record Document 1.  The City filed a Notice of Removal on January 23, 2006 and a Removal Order was entered on January 25, 2006.  See Record Documents 2 & 4.  On February 23, 2006, the City filed its answer, denying certain allegations in the complaint and setting forth affirmative defenses.  See Record Document 5.  On September 15, 2006, Thrash filed a First Amending

Complaint, making only slight amendments to two paragraphs of the original complaint. See Record Document 14.

The City filed the instant Motion for Summary Judgment on October 31, 2006. See Record Document 15. In accordance with extensions granted by the Court, Thrash filed his opposition to the Motion for Summary Judgment on December 15, 2006. See Record Document 19.

**II.     LAW AND ANALYSIS.**

    **A.     Summary Judgment Standard.**

Summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); New York Life Ins. Co. v. Travelers Ins. Co., 92 F.3d 336, 338 (5th Cir. 1996). The Supreme Court has interpreted the plain language of Rule 56(c) to mandate "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); see also Gunaca v. Texas, 65 F.3d 467, 469 (5th Cir. 1995). A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting Celotex, 477 U.S. at 323-25, 106 S. Ct. at 2552). If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response."

Little, 37 F.3d at 1075.

If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. Wallace v. Texas Tech Univ., 80 F.3d 1042, 1046-47 (5th Cir. 1996). The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. Little, 37 F.3d at 1075; Wallace, 80 F.3d at 1047. Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Wallace, 80 F.3d at 1048 (quoting Little, 37 F.3d at 1075); see also S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 494 (5th Cir. 1996). The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." McCallum Highlands v. Washington Capital Dus, Inc., 66 F.3d 89, 92 (5th Cir. 1995), as revised on denial of rehearing, 70 F.3d 26 (5th Cir. 1995). Unless there is sufficient evidence for a jury to return a verdict in the nonmovant's favor, there is no genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-51, 106 S. Ct. 2505, 2511 (1986).

In order to determine whether or not summary judgment should be granted, an examination of the substantive law is essential. Substantive law will identify which facts are material in that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id.

With these principles in mind, the Court now turns to a review of the claims at issue.

B.    **Section 1983 Equal Protection Claim.**[1]

The Fourteenth Amendment to the United States Constitution states "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." Plyler v. Doe, 457 U.S. 202, 210, 102 S.Ct. 2382, 2391 (1982). The Fourteenth Amendment "guarantees the equal treatment of those similarly-situated . . . [b]ut, for good reason, where people are not similarly-situated, equal treatment is not required." Malagon de Fuentes v. Gonzales, 462 F.3d 498, 507 (5th Cir. 2006) (citations omitted). Thrash bears the burden of demonstrating that similarly situated persons have been treated differently. See Sinclair v. Stalder, No. 03-30456, 2003 WL 22436063, **1 (5th Cir. Oct. 28, 2003) (citations omitted).

In this case, Thrash claims that he was denied equal protection of the law because Red River Chevrolet, a business in the RDD and in close proximity to his business, has been allowed to continually operate a used car sales lot. There is no dispute that Red River Chevrolet has been continually operating its used car sales business on East Texas Street, across from the property at issue in this case, long before the RDD was enacted. See Record Document 15, Exhibit A at ¶ 16. Since the creation of the RDD, Red River Chevrolet has never discontinued this use for a period greater than six months. See id. In fact, when questioned by an attorney for the City, Thrash stated in his deposition that he doubted if Red River Chevrolet's used car sales business located on East Texas Street

---

[1] "To establish a claim under 42 U.S.C. § 1983, [Thrash] must show that [Defendant] acted under color of state law to deprive [him] of a right secured by the Constitution and laws of the United States." White v. Scrivner Corp., 594 F.2d 140, 141 (5th Cir. 1979).

had never shut down for more than six months. See id., Exhibit B at 90. Thus, it is clear that Red River Chevrolet's used car sales business is a grandfathered, non-conforming use that is permitted to continue in the RDD subject to other requirements of the City's UDD. See id.

Yet, Thrash argues that a used car business never ceased operating for a period in excess of six months at the Property; thus, the Property never "lost its grandfathered nonconforming use status" and he was similarly situated with Red River Chevrolet. Record Document 19-4, ¶ 7. Thrash contends that the City "should have recognized that Rocky's Auto Sales was similarly situated with Red River Chevrolet." Record Document 19-1 at 8. He also maintains that the City's "[six] months abandonment or discontinue provision . . . was an after the fact explanation to try to justify" the its actions. Id. at 4. Thrash has submitted affidavits from individuals regarding the time period of 1993 to 1996. See id., Exhibits M-O. Billy Cochran, Carl Cochran, and Ellis Monette, the three affiants, are all either owners of or work at businesses on East Texas Street and state "that at no time . . . from the beginning of 1993 through the end of 1996 has the property at 320 East Texas Street . . . been abandoned, or, its use as a used car lot been discontinued, for a period of 6 months." See id., ¶¶ 3.

Even if this Court assumes that such affidavits are true as to the time period of 1993 to 1996, there is still undisputed record evidence that a used car business ceased operating at the Property from November 1999 to August 2000, a period in excess of six months. The City's water records indicate that Glenn's Auto Sales ceased operating at the Property in November 1999. See Record Document 25, Exhibit F (Affidavit of Wadene Jordan, Water Billing Supervisor of the Bossier City Water Department), ¶ 3. Thrash

acquired a certificate of occupancy and opened his used car sales business in August 2000, some ten months after the prior used car business shut down. The only business that operated at 320 East Texas Street in the aforementioned ten month period was a dent repair business, Dent X-Parts. See id., Exhibit F, ¶¶ 3-4; Exhibit D at 43. As stated previously, under the City's UDC, once the used car sales business ceased for a period in excess of six months, the business lost its nonconforming use rights. Thus, regardless of the time period of 1993 to 1996, the record is clear that Thrash lost his grandfathered status in 2000 and is, therefore, not similarly situated with Red River Chevrolet, a company that has never discontinued its used car sales business on East Texas Street since the creation of the RDD. Accordingly, Thrash's Section 1983 Equal Protection claim fails because Red River Chevrolet is not similarly situated and summary judgment is granted.

    **C.    Section 1983 Due Process Claim.**[2]

Thrash argues he was denied due process of the law because the City failed to record Ordinance No. 42 of 1996[3] in the conveyance or mortgage records and that he was denied a meaningful hearing. See Record Document 19-1 at 5-7. The Court finds Thrash's due process claims to be unfounded.

In Palermo Land Co., Inc. v. Planning Comm'n of Calcasieu Parish, 561 So.2d 482

---

[2] In its reply brief, the City contends that Thrash asserted only a Section 1983 equal protection claim in his complaint. See Record Document 25 at 1. The Court disagrees, as paragraphs one and eleven of Thrash's complaint allege a due process claim and negligence claims. See Record Document 1, ¶¶ 1 & 11. Accordingly, the Court will examine the merits of Thrash's due process and negligence claims.

[3] Ordinance No. 42 approved Cobb's request for a nonconforming use at 320 East Texas Street for a five year term (1996-2001), subject to renewal at the expiration of the five year term. See Record Document 15, Exhibit A-3.

(La. 1990), the Louisiana Supreme Court stated:

> In <u>Southside Civic Association v. Guaranty Savings Assurance</u>, 339 So.2d 323, 326 (La. 1976), this court observed: 'Statutes requiring notice preparatory to the enactment or amendment of zoning measures typically provide for constructive rather than actual notice, as by publication in a local newspaper a specified number of times. . . . The courts have held rather uniformly that this contention [that actual notice is necessary] is groundless and that the statute need not provide for, nor the ordinance be passed upon, actual notice.' . . . We deem the publication sufficient notice here.

<u>Palermo Land Co., Inc.</u>, 561 So.2d at 496; <u>see also</u> <u>Bernard v. Parish of Jefferson</u>, No. 04-CA-19 (La.App. 5th Cir. May 26, 2004), 874 So.2d 406, 407 (stating that "typically only constructive notice, usually by publication in the local newspaper, is required by zoning ordinances, and that the courts have uniformly held this method of notice to be sufficient."). Louisiana Civil Code Article 5 further states that "no one may avail himself of ignorance of the law."

The City's records indicate that notice of the City Council hearing considering Ordinance No. 42 of 1996 was published in the Bossier Press Tribune on April 19, 1996. <u>See</u> Record Document 25, Exhibit E (Affidavit of Helen Thornton, City Clerk for the City of Bossier City) at ¶¶ 3-4. Moreover, the approval of Ordinance No. 42 of 1996 was published in the Bossier Press Tribune on three separate occasions, May 17, 24, and 31, 1996. <u>See id.</u> Based on well settled Louisiana law as stated in <u>Palermo Land Co., Inc.</u>, 561 So.2d at 496, the undisputed record evidence establishes that adequate notice of Ordinance No. 42 of 1996 was given and summary judgment is granted as to Thrash's due process claim.

### D.     Breach of Contract Claim.

In support of his breach of contract claim, Thrash points to the fact that he was

issued a "permanent occupational license" by the City for the years 2000, 2001, 2002, and 2003. Record Document 19-1 at 2. Thrash contends that the City issued him a "permanent certificate of occupancy" and that he relied on such certificate before he invested money and opened his business at the Property. Id. at 9. He further "alleges that the permanent certificate of occupancy was a contract, or at least an implied contract with the [C]ity . . . that was ultimately breached by the defendant." Id. at 10. Likewise, Thrash seems to allege that his occupational licence was also a contract with the City.

Louisiana jurisprudence is well settled in holding that a business license, absent clear, unequivocal language to the contrary, issued by a municipality is not a contract. See generally Toye Bros. Yellow Cab Co. v. Cooperative Cab Co., 7 So.2d 353,354 (La. 1942); Seaboard Air Line Ry. v. City of Raleigh, 242 U.S. 15, 19-20, 37 S.Ct. 8, 10 (1916); and City of St. Louis v. United Ry., 210 U.S. 266, 274, 28 S.Ct. 630, 632 (1908). Here, Thrash has pointed to no language in either his occupational license or certificate of occupancy that even remotely suggests a contractual relationship between himself and the City. Further, Thrash's claim that the license or certificate of occupancy was a binding a contract is in direct contravention with Section 3.20(p) of the City Charter, which states:

> **Section 3.20. Action requiring an ordinance.**
>
> In addition to the other acts required by law or by specific provision of this charter to be done by ordinance, those acts of the City Council listed below shall be by ordinance. . . . .
>
> (p)   Authorize any contract or formal agreement on behalf of the City.

Record Document 15-2, Exhibit C (Excerpts from the City Charter). There is no dispute that the City Council never adopted an ordinance approving Thrash's occupational license.

As to Thrash's certificate of occupancy, Ordinance No. 125 of 2003 simply reinstated a nonconforming used car lot in the RDD for a period of two years. See id., Exhibit A-9.

Moreover, Thrash's contract claim is flawed because his occupational license and/or his certificate of occupancy was never revoked or denied. Ordinance No. 125 of 2003 allowed for the possibility of renewal of Thrash's nonconforming use. See id. Yet, Thrash voluntarily chose to sell his business in 2005, before the expiration of his two year term. See id., Exhibit B at Thrash #10. He never requested an extension of the nonconforming use period and/or applied for a 2005 occupational license. See id., Exhibit B at 94. Therefore, based on the foregoing analysis, Thrash's breach of contract claim fails and summary judgment is granted.

### E.   Negligence Claims.

Relying on Louisiana Civil Code Articles 2315 and 2317, Thrash argues that the City was negligent in not informing him of the existence of Ordinance No. 42 of 1996 when he first applied for a certificate of occupancy for his used car sales business at the Property in calendar year 2000. See Record Document 19-1 at 8. Thrash contends that he understood from obtaining an occupational license from the City that he had a permanent right to operate his used car sales business at the Property. See Record Document 1, ¶¶ 5-8; Record Document 19-1 at 2, 4. Thrash further argues that his tort claims are timely because prescription did not commence until either the expiration of Ordinance No. 125[4] of 2003 or the date he sold his property in 2005.

---

[4] By Ordinance No. 125 of 2003, the City Council granted Thrash the right to operate his used car sales business at the Property for an additional two years, subject to reapplication at the expiration of the two year term.

The Court has reviewed the record and finds, as argued by the City, that Thrash's tort claims are prescribed.[5] Tort claims in Louisiana are limited by the one year prescriptive period contained in Louisiana Civil Code 3492. Article 3492 states that prescription "commences to run from the day injury or damage is sustained." La. C.C. Article 3492. Under Louisiana law, "prescription commences when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort. An injured party has constructive notice of his condition when he possesses information sufficient to incite curiosity, excite attention or put a reasonable person on guard to call for inquiry." Martinez Management, Inc. v. Caston, No. 39,500 (La.App. 2nd Cir. 4/13/05), 900 So.2d 301, 305, citing Campo v. Correa, 01-2707 (La. 6/21/02), 828 So.2d 502 and Boyd v. B.B.C. Brown Boveri, Inc., 26,889 (La.App.2nd Cir. 5/10/95), 656 So.2d 683.

Based on the aforementioned reasoning, prescription commenced on Thrash's tort claims in December 2003, when he learned that he did not have a perpetual right to operate his used car business on the Property. On December 16, 2003, the City Council adopted Ordinance No. 125 of 2003 and notified Thrash that he could not operate his used car sales business in perpetuity. See Record Document 15, Exhibit B at 94-95. In his deposition, Thrash stated that he was told in December 2003 that it was two years and out. See id. Such statement correlates with Thrash's petition, wherein he alleged:

> Petitioner was initially issued an occupational license by defendant, which amounted to a contract to operate his business in the City of Bossier

---

[5]The City also argued that Thrash's Section 1983 claims were also prescribed. The Court did not reach the issue of prescription of Thrash's Section 1983 claims because summary judgment was granted as to those claims based on the merits.

City, Louisiana, and *later denied the right due to a Bossier City Counsel meeting*.

Record Document 1, ¶ 7 (emphasis added). As of December 16, 2003, Thrash had actual knowledge that his certificate of occupancy was not perpetual; that his Property had lost its grandfathered status; and that he would have to reapply in the future to continue his used care sales business. Further, Thrash stated that he interpreted the City Council's statements of December 16, 2003 to mean that he would not be granted an additional terms to operate his used car sales business after expiration of his two year term. These undisputed facts establish that Thrash's tort claims prescribed one year from December 16, 2003; yet, Thrash did not file suit until December 30, 2005 – some two years later. Accordingly, Thrash's tort claims are prescribed and summary judgment is granted.

### III. CONCLUSION.

Based on the foregoing analysis, the City's Motion for Summary Judgment is **GRANTED** and all of Thrash's claims are **DISMISSED WITH PREJUDICE**. A judgment consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 12th day of March, 2007.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE